IN THE UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOSHUA ADAM SCHULTZ | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 14-0261 |
| | ) |
| v. | ) |
| | ) |
| TRANS UNION, LLC, et al. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S PROPOSED FINDING OF FACTS**

1. Plaintiff Joshua Adam Schultz is an adult individual residing in Altoona, Wisconsin. *See* Ex. H, Pl. Dep., at 8:17-18.

2. Great Lake Higher Education Guaranty Corporation ("GLHEGC") is a Wisconsin business entity and subsidiary of a parent company Great Lakes Higher Education Corporation and a guarantor of federally funded student loans. *See* Ex. A, Deposition of Beth Erickson ("Erickson Dep."), at 13:16-23, 18:12-19:2, 20:17-21:6.[1]

3. Great Lake Education Loan Servicing, Inc. ("GLELSI") is also a Wisconsin business entity and subsidiary of parent company Great Lakes Higher Education Corporation and a servicer of student loans. *Id.*

4. This court possesses jurisdiction over this matter because Plaintiff alleges claims against Defendants pursuant to the federal Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* ("TCPA") and as such federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227(b)(3)(A) applies.

---

[1] Beth Erickson is the Vice President of Repayment Solutions and Default Collections for GLHEGC and was designated as corporate representative by GLHEGC. *See id.* at 7:8-10.

## A. GLHEGC and GLELSI Use An Automated Telephone Dialing System.

5. Both GLHEGC and GLELSI (collectively "Defendants") make use of an Automated Telephone Dialing System ("ATDS") that they commonly call the "Avaya" system. *See* Ex. A, Erickson Dep., at 27:17-25; 50:25-51:11; *See* Ex. C, Deposition of Mark Stoch ("Storch Dep."), at 63:25-64:20.[2]

6. Defendants' documentation confirms that the Avaya system is an autodialer, and both companies even employ individuals who are called "auto-dialer specialists" to operate the system. *See* Ex. A, Erickson Dep., at 36:19 – 37:7; *See* Ex. C, Storch Dep., at 77:2 – 78:9; Ex. F, Autodialer Specialist Manual; Ex. L, Portion of Avaya Manual.

7. The Avaya system further uses a call list created by GHLEGC and GLELSI to make collection calls. *See* Ex. A, Erickson Dep., 37:8-16; Ex. C, Storch Dep., at 87:15- 88:8; Ex. G, Portion of Avaya Manual.

8. Defendants' representatives even admit that the Avaya system is an ATDS and satisfies the definition of a predictive dialer:

> Q. So the system that you just described for all of us, is it an automated telephone dialing system?
>
> A. It can be called an automated telephone dialing system.
>
> * * *
>
> Q. Could it also be called a predictive dialer?
>
> A. In certain definitions it could be.

Ex. C, Storch Dep., at 89:13 – 18; 90:6-8. *See also* Ex. A, Erickson Dep., at 37:17 – 38:7.

---

[2] Mark Storch is Chief Borrower Services Officer for GLELSI and was designated as a corporate representative by GLELSI. *See id* at 13:12-14.

**B. The Joshua Allen Schultz Student Loan**

9. Defendants have been engaging in collection activities relating to a delinquent student loan belonging to Joshua Allen Schultz, **a non-party who Plaintiff does not know and is of no relation to Plaintiff**. *See* Ex. A, Erickson Dep., at 21:7 – 22:7, 24:3-4, 24:25 – 25:5; Ex. H, Pl. Dep., at 75:23 – 76:3, 82:12 – 83:23.

10. Defendants, however, have been inexplicably engaging in collections activities against Plaintiff relating to this non-party debt since at least July 2010 when Plaintiff started receiving letters from Defendants. *See* Ex. H, Pl. Dep., at 37:1-2, 48:15-22; Ex. K, August 2010 Correspondence from Great Lakes for Non-Party Debt.

11. Defendants possess call logs related to the above stated non-party account that documents the dates collection calls were made to specific telephone numbers. *See* Ex. A, Erickson Dep., at 31:16-32:11; Ex. C, Storch Dep., at 35:9 – 36:14; Ex. B, Call Logs.

12. Defendants own call logs confirm that between October 7, 2011 and February 16, 2012, Defendants placed 78 calls to Plaintiff's cellular telephone (ending in 9195).[3] *See* Ex. A, Erickson Dep., at 33:14 – 34:5, 35:1 – 35:21, 46:13-25, 48:22 – 49:3; Ex. C, Storch Dep., at 36:1-14, 36:22 – 37:13; 38:18 – 39:6, 39:7- 40:17; 42:22 – 43:6; Ex. H, Pl. Dep., at 8:21-25; Ex. B, Call Logs.

13. Defendants placed the above stated calls using the Avaya autodialing system described above. *See* Ex. A, Erickson Dep., 35:22-36:3, 47:8-12; 48:3-13; Ex. C, Storch Dep. 38:4-18.

14. Defendants' representatives further confirmed that the calls were placed to Plaintiff's cellular telephone number without Plaintiff's consent. *See* Ex. A, Erickson Dep., 76:15-19; Ex. C, Storch Dep, at 69:23 – 70:6.

---

[3] GLHEGC placed 56 calls. *See id.* GLELSI placed 22 calls. *See id.*

15. Defendants' own policies also confirm that Defendants do not have consent to contact a non-borrower using an autodialer. *See* Ex. A, Erikson Dep., at 106:19-25; 111:8-13; Ex. E, Auto-Dial Consent Policy.

**C. Plaintiff's Student Loan**

16. On or about April 26, 2012, GLELSI began collection activities relating to a rehabilitated student loan belonging to Plaintiff. *See* Storch Dep., at 45:24 – 46:14.

17. GLELSI possesses call logs related to the above stated account that documents the dates calls were made to specific telephone numbers. *See* Ex. A, Erickson Dep., 76:22 – 77:9; Ex. C, Storch Dep., at 47:21 – 48:8; Ex. D, Call Logs.

18. GLELSI's own call logs confirm that it placed one call to Plaintiff's cellular telephone on July 18, 2012. *See* Ex. C, Storch Dep., at 48:9-25.

19. The call logs also confirm that another debt collector, Performant Recovery, placed 27 calls to Plaintiff's cellular telephone between August 1, 2012 and January 4, 2013 on behalf of and at the request of GLELSI with GLELSI's full knowledge that it was doing so. *See* Ex. C, Storch Dep., 55:6-22, 57:25 - 58:4; 60:5 – 63:24; Ex. D, Call Logs.

20. Both GLELSI and Performant Recovery (on GLELSI's behalf) placed the above stated calls using the Ayaya autodialing system described above. *See* Ex. C, Storch Dep., at 49:5 – 13; 56:24 – 57:24.

21. Three of the calls placed by Performant on behalf of GLELSI also employed the use of a pre-recorded voice message. *See* Storch Dep., at 62:18 – 63:8.

22. GLELSI's representative further confirmed that the calls were placed to Plaintiff's cellular telephone number without Plaintiff's consent. *See* Ex. C, Storch Dep, at 69:23 – 70:6.

23. Plaintiff's loan applications and student records also confirm that Plaintiff never provided the cellular telephone number at issue in connection with applying for a student loan, nor did the number appear in any of his student records. *See* Ex. I, Student Loan Applications and Portions of Student Records; Ex. J, Promissory Note.

**D. GLELSI and GLHEGC's Reckless Non-Compliance With the TCPA.**

24. Defendants' representatives confirmed that the use of their ATDS was managed entirely by computers, no human oversight existed to monitor the propriety of using an ATDS relative to the obligations of the TCPA:

> Q. So the decision on whether and when to allow the Avaya system to make telephone calls is made by another computer system that you call the mainframe.
>
> A. Yes.
>
> Q. So there's no human involvement.
>
> A. No.

*See* Ex. A, Erickson Dep., at 86:4 – 12.

25. Moreover, the computer that was making decisions on using the ATDS did not even take into consideration whether the number in question was provided through express consent:

> Q. So it's looking for a phone number and a specific field?
>
> A. Field.
>
> Q. And the computer presumes that the number that is in that field is a number that was given by a borrower or that was given by a servicer?
>
> A. By a servicer, yes.
>
> Q. So there is no special field that the computer looks at as to whether or not express consent was provided to call a cell phone number?
>
> A No.

5

> Q	And that's it; right? There's nothing else to the procedure?
>
> A	Correct.

Ex. A, Erickson Dep., 91:5-15.

26. Defendants likewise have no procedures in place to obtain express consent for the telephone numbers in question.

> Q.	[GLHEGC] doesn't attempt to obtain written consent from an alleged borrower to contact them on a cell phone number?
>
> A.	No.
>
> Q.	[GLHEGC] doesn't attempt to make a telephone recording of an alleged borrower giving express consent to contact the cell phone number?
>
> A.	No.

Ex. A, Erickson Dep., at 91:19 – 92:1.

27. Defendants further do not even bother to query readily available databases that would inform the company that the number being called is a cellphone number. *See* Ex. A, Erickson Dep., at 92:6-9.

28. Defendants own policy even confirm that they did not have any policies to comply with the TCPA until "Great Lakes initially implemented the ability to determine auto-dial consent in April 2012." *See* Ex. E, Great Lakes Auto-Dial Consent Policy; Ex. A, Erickson Dep., 106:17 – 107:8.

29. GLELSI's representative also could not even confirm one way or the other whether its agent Performant had any procedures at all to comply with TCPA. *See* Ex. C, Storch Dep., at 68:5-11.

30. Defendants further were making the majority of the above calls for a debt that belonged to another unrelated person for which they has no rational explanation:

> Q. What's your understanding as to how your company or the other company came into Joshua Schultz, the plaintiff's, address being associated with Joshua Allen Schultz, the nonparty's debt?
>
> A. I don't have any understanding of where that came from.

Ex. A, Erickson Dep., at 95:17-23.

31. Defendants to date have not even corrected their files to memorialize that Plaintiff's cellular telephone number should not be autodialed and remarkably continue to include Plaintiff's cellular telephone number as a contact number relating to non-party Joshua Allen Schultz's delinquent loan:

> Q. Now, you agree that [the account notes] all relate to Joshua Allen Schultz, the nonparty?
>
> A. Yes.
>
> Q. And do you agree that Mr. Schultz's – the nonparty's current file with [GLHEGC] still includes the address and cell phone number of Joshua Schultz, the plaintiff?
>
> A. The history, yes.
>
> Q. And it's listed under previous address and phone number; correct?
>
> A. Yes.
>
> Q. And you know, as you sit here today, with 100 percent certainty that Joshua Allen Schultz's previous address and phone number was never that; correct?
>
> A. Yes.
>
> Q. It stays in Joshua Allen Schultz's file anyway?
>
> A. Yes.

*See* Ex. A, Erickson Dep., at 123:14-17, 126:6-23.

32. Moreover, Plaintiff even contacted Defendants and confirmed that he was not responsible for the loan belonging to non-party Joshua Allen Schultz, yet Defendants continued to send him collection letters and make the violating telephone calls described above. *See* Ex. H, Pl. Dep., at 48:15 – 52:3, 59:8-62:2, 66:9-11.

Respectfully Submitted,

**FRANCIS & MAILMAN, P.C.**

*/s/ Gregory Gorski*
GREGORY GORSKI
(admitted *pro hac vice*)
100 South Broad Street
Philadelphia, PA 19110
Telephone: (215) 735-8600
Facsimile: (215) 940-8000

Dated: January 30, 2015